## PRESTON D. THORNHILL v. CITY OF CINCINNATI.

**1. DRIVING STREET CARS DOES NOT MEAN RUNNING THEM.**

An information filed in the police court of Cincinnati, charging that the defendant "did unlawfully and knowingly drive a street-car through the streets of said city, without having a conductor thereon," was not a sufficient charge under an ordinance of the city which provides, "that no cars shall be run without both a driver and conductor" and makes it an offense punishable by a fine.

**2. COUNCIL NO POWER TO MAKE PENAL THE RUNNING OF STREET CARS WITHOUT BOTH A DRIVER AND CONDUCTOR.**

Neither paragraph 1, 3 or 10 of sec. 1692, Rev. Stat., authorizes the council of a municipal corporation to pass an ordinance making such action an offense punishable by fine or imprisonment.

**3. CANNOT ENFORCE CONTRACT TO RUN BY PENAL ORDINANCE.**

Nor does sec. 2501, Rev. Stat., give such authority. And where under its provisions the city has granted to a street railroad company, the right to construct and operate its road within the city, and has prescribed the terms and conditions upon, and the manner in which the road shall be constructed and operated, one of which terms and conditions was that the street railroad company should obey and observe the requirements of the ordinances of said city, as to the running of cars thereon, one of which was that "no cars should be run without both a driver and conductor," which terms were assented to by the street railroad company, while this made a valid contract between the city and the company, which may be enforced by the methods and remedies known to the law, it did not make valid such ordinance of the city passed without authority of law.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

In this case we hold:

First—That a charge in an information, filed in the police court of Cincinnati, that the plaintiff in error, on a certain day named therein, did unlawfully and knowingly drive a street car through the streets of the city of Cincinnati, without having a conductor thereon, was not a sufficient charge under the provisions of sec. 18 of the general street railway ordinance of the city, passed February 7, 1879, which provides, "that no cars shall be run without both a driver and conductor," and which is made an offense by said ordinance, punishable by a fine of $20. The driving of a car under such circumstances is not made an offense, (the word not occurring anywhere in the section), but it is the running thereof, which is several times used—and it can not be properly claimed that these two words have the same meaning. It may well be, that if the affidavit and the information had followed the language of the ordinance, (as it should have done), and the proof had shown that the defendant below was the person then operating and putting the car in motion, and having the management and control of it, that this would have justified his conviction on the charge so made that he was running the car, if the ordinance itself was a valid one. But the converse of this is not true, and the mere proof that the defendant was driving the car without a conductor upon it, (and this was all that was shown on this point), did not establish the fact that he was unlawfully running it, within the meaning of the ordinance.

Second—Had the council a right to pass such a penal ordinance? In view of

several decisions of the supreme court, and particularly of that in the case of the Village of Ravenna v. The Pennsylvania Co., 45 O. S., 118, "that municipal corporations in their public capacity possess such powers, and such only, as are expressly granted by statute, and such as may be implied as essential to carry into effect those which are expressly granted," and of the other questions there decided, on an examination of the various statutes conferring powers on municipal corporations, to which our attention has been called, we are unable to find sufficient warrant therefor.

It is claimed by the counsel for the city that such authority is conferred by paragraphs 1, 3 and 10 of sec. 1692, Rev. Stat.  But as to Nos. 1 and 3, it is sufficient to say that in our judgment the decision above referred to, practically holds the contrary.  It decides that neither of these paragraphs (which in that case were relied on as conferring the authority) gives the right to councils to pass an ordinance requiring railroad companies to keep a watchman where their tracks cross a street, and impose penalties for neglect to do so.

Paragraph 10 gives to the council the right "to regulate the use of carts, drays, wagons, hackney coaches," (but surely neither of these terms when used in a penal statute can be held to include a street car), "and every description of carriages which may be kept for hire, or livery stable purposes."  And we think it equally clear, that a street car is not a "carriage kept for hire, or livery stable purposes."

Third—But it is further claimed on behalf of the city, that such authority is given by sec. 2501, Rev. Stat., taken in connection with the fact shown in the case, that the Newport & Cincinnati Street Railroad Co. (whose car was being driven by defendant below), had constructed its said road under an ordinance of the city, which provided that it was to be operated under the general street railroad ordinance of the city, one of the sections of which is the one under which this prosecution was commenced, and that this made the ordinance a legal one.

We agree and concede that such legislation by the council under sec. 2501, and its acceptance by the company, did make a valid contract between the city and the company, and bound the latter to obey the requirements of such ordinance and sec. 18 thereof, and was such a contract as could be enforced by the city by means of some of the remedies known to the law.  But we can not see that this sec. 2501, even by implication, gives the right to council to pass an ordinance making those who fail to observe these rules, or who violate them, liable to punishment by fine or imprisonment.  The powers conferred on municipal corporations by sec. 1692, by the express terms of the section itself, may be thus enforced, but nothing in sec. 2501, looks in that direction.  Such power should be plainly conferred, and not be left to implication.  If it is not conferred by the legislature, surely no agreement made between the city and a company could give the right.  These views as to the right of a municipal corporation to pass a penal ordinance, under substantially the same state of facts, were announced by the supreme court of New York, in the decision in the case of Street Railroad Co. v. City of Brooklyn, 37 Hun., 413.  And the holding both of the superior court of this city in general term, and of the district court of Hamilton county, in the cases cited in Judge Peck's work on Municipal Corporations, page 398, as we understand, was, that under such a contract between the city and the company, the former could enforce it only by the ordinary legal remedies.

In our judgment then, the legislature has not seen proper to confer such powers upon the council.  It would seem that it might well have been done, and be to the advantage of the public.  It is with reluctance that we have reached the conclusion that such is the case, for we esteem the regulation in question (as well as the others made in the ordinance), a most wholesome one, and one which should be observed by the company as it agreed to do, and obedience to which should be enforced by legal methods.

For these reasons, hastily stated, we feel constrained to reverse the judgment of the common pleas and police courts, with costs, and remand the case to the

common pleas for execution as to costs and to the police court with instructions to dismiss the prosecution.

Judge Cox favors the affirmance of the judgment.

Simrall & Mack, for plaintiff in error.

Theodore Horstman, city solicitor, for defendant in error.